# Sarah Welsh's Appeal.

---

# Wesley Bowman's Appeal.

---

# Estate of Moses Everett.

Nothing less than clear and undoubted evidence should be held sufficient to extend the lien of debts against the real estate of a decedent.

In this case conversations between an administrator *d. b. n.* and the widow and heirs, *held,* too indefinite to amount to a waiver of the limitation of the act of February 24, 1834.

(Argued March 2, 1887. Decided March 14, 1887.)

July Term, 1886, Nos. 205, 206, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Appeals from a decree of the Orphans' Court of Columbia County confirming an auditor's report with modifications, and awarding distribution. Affirmed.

Moses Everett died July 8, 1877, leaving to survive him a widow, Letitia Everett, and six children, *viz.,* T. V. Everett, James, Henry C., Albert, Mary M., and Clara J., intermarried with one Melick. A few days after his death letters of administration were granted to T. V. Everett and H. R. Kline. Mr. Kline was the active administrator in settling the personal estate. Both T. V. Everett and Kline died before filing an account. J. Howard Kline, administrator of H. R. Kline, filed the account of the latter as administrator of Moses Everett, which account was finally confirmed December 10, 1881, showing a balance due accountant of $148.48.

In this account credits are claimed for payments made on two notes drawn by Moses Everett to Sarah Welsh dated respectively, April 15, 1873, and April 18, 1874, each for the sum of $100, by H. R. Kline, subsequent to the death of Moses Everett and prior to the death of H. R. Kline, last payment being made March 28, 1881, and indorsed on the notes.

Letters of administration, *d. b. n.* in the estate of Moses Everett were granted to J. Howard Kline December 2, 1881. On December 13, 1884, said administrator *d. b. n.* presented his petition to the orphans' court praying for an order for sale of real estate for payment of debts. The schedule of debts attached to the petition contained, among others, the claim of Sarah Welsh. Sale was ordered, and on January 27, 1885, the real estate was sold for the sum of $2,497 and report thereof confirmed by the court February 7, 1885.

The accountant filed his first and final account to September term, 1885, No. 25, to which three exceptions were filed September 30, 1885, in substance claiming that accountant had not charged himself with all that had come into his hands or that he should have received. Subsequently, by leave of court, another exception to the accountant's charge for commission of $126.30 and counsel fee of $80 was filed.

William Chrisman, Esq., was appointed auditor on exceptions, and to make distribution of the balance in accountant's hands. Before the auditor no evidence was given in regard to matters in the three exceptions first filed; and the surcharge therein claimed was disallowed by the auditor, and his finding confirmed by the court. The exception as to commission and counsel fee was overruled by the auditor, but the report of the auditor was modified by the court deciding that $125 was a liberal allowance for the compensation of the administrator and the attorney, and surcharged accountant with the difference of $81.80.

In the matter of the distribution among other claims presented for payment out of the fund for distribution was that of Wesley Bowman, on book account, amount $39.08, and Sarah Welsh, being the balance of the two notes above named.

First note due April 18, 1874, amount $100; payments made by the administrators, April 16, 1879, $30, and March 28, 1881, $40. Second note due April 15, 1875, amount, $100; payments made by the administrator April 16, 1879, $31, and March 28, 1881, $40. Balance found due by audit on both notes at time of distribution, $184.55.

The auditor found as facts that the claims presented and allowed by the auditor were known to the widow and heirs, and the correctness of the same acknowledged by them before the statute of limitations could have been pleaded against any of them, as was also their expressed desire to have them paid, coupled with which was their request to have proceedings to sell real estate postponed to enable them to raise the money to pay the debt. This request was first made of J. H. Kline, the present accountant, prior to July 8, 1882, and repeatedly from that time forward, both before and after the sale of real estate was ordered. That claimants had not been guilty of laches, and that under the circumstances in this case they were not barred by the statute of limitations, and allowed the claims so presented, among them that of Sarah Welsh and Wesley Bowman, rejecting only one, and that because it had been barred prior to the death of Moses Everett. Counsel for widow and heirs objected to the allowance of all accounts and claims presented by the several creditors as being barred by the statute of limitations.

The auditor's first report was presented and confirmed nisi by the court upon February 13, 1886, and without any expression of opinion of the court, was, upon the first day of April, 1886, re-

ferred back to the auditor with directions to receive further testimony upon two points: first, the time when the administrator *d. b. n.* paid any debt due from the estate of the intestate for which he claimed credit or to be allowed in distribution; second, when, as near as can be ascertained, did conversations take place between the widow of Moses Everett and his heirs, and the administrator *d. b. n.,* in reference to the debts and postponing the time of sale of real estate? Which of the heirs, if any, were present and took part in such conversation? Which of the heirs assented to a postponement of the time of sale of real estate to a time later than the 8th day of July, 1882, and in what way was such assent given?

He reported the testimony of J. Howard Kline as to two conversations had with the widow and two of the five heirs, prior to July 8, 1882.

Sometime in December, 1881, according to his testimony: "I had a conversation with Mary, Henry, and the widow. Henry and the widow said the debts should or ought to be paid, but they didn't know how to pay them. . . . They had no money then; . . . they said they ought to be paid, but they did not say we will pay them . . . said they ought to be paid, but did not promise to pay them. . . . At that time we talked of the real estate and I said the real estate would have to be sold unless they could negotiate a loan,—no day at that time fixed for selling the real estate."

"About July or August, 1882, I next had a conversation with the heirs, the same ones as before, Mary, Henry, and the widow. About the same talk was brought over at that meeting. Nothing new from what took place before," except that "I began to ask them about the claims, and they said they were correct."

The auditor's second report was confirmed nisi May 3, 1886.

Same exceptions were filed to both reports and both argued and disposed of by an opinion and decree of court filed July 5, 1886, modifying the report of the auditor by the rejection of certain claims of creditors presented to the auditor, among them that of Sarah Welsh and Wesley Bowman and the surcharging accountant with $81.80 on account of charge in account by administrator for services and counsel fee, as above stated.

In the course of the opinion the court said:

All of the claims presented before the auditor for distribution

were simple contract debts, and were all due at the time of the death of Moses Everett, and several of them some years before. At the time of the sale of the real estate they were all barred by the six years' statute of limitations. Payments made by an administrator, on a debt due by the decedent, do not keep alive or renew a debt against the estate; nor do promises or admissions made by him have that effect. Giving notice of the claim by a creditor and making demand of payment, or placing the evidence of the claim in the hands of the administrator, does not stop the running of the statute. Steel v. Steel, 12 Pa. 66; Fritz v. Thomas, 1 Whart. 66, 29 Am. Dec. 39; Clark v. Maguire, 35 Pa. 259; Shand's Estate, 1 Pa. Co. Ct. 600.

These debts had each and all of them ceased to be a lien on the real estate of the decedent at the time of the sale. After a lapse of five years, by the 24th section of the act of February 24, 1834, all debts cease to be a lien on the land of a decedent unless an action be brought within that time or a copy of the claim be filed in the office of the prothonotary as therein required.

Notice of the claim amounts to nothing. In Bindley's Appeal, 69 Pa. 295, it was held that presentation by a creditor of his claim before an auditor making distribution under a previous sale and the receipt of a dividend did not continue the lien. The leaning of the court, says SHARSWOOD, J., through the whole current of the numerous decisions upon the subject, has been to favor the heir and to require of the creditors the vigilant prosecution of their demands in the mode pointed out. It is evident that no admission, however solemn, will dispense with an action.

Even where an action is brought within the five years, yet if the land is not taken into execution within that time the lien is gone. So, if the five years expire between the time when the sale is ordered by the orphans' court, and the day of sale, the lien is gone as against the heirs. Maus v. Hummel, 11 Pa. 228; Bindley's Appeal, 69 Pa. 295.

It does not appear that the heirs or any of them said anything to any of their creditors to induce them to forbear filing a lien. None of them made any promise to any of these creditors to pay them, or that the lien of debts should remain.

The fact that they had communication with the administrator in 1881, and afterwards, in which they expressed a desire if possible to save the farm from sale, and that they made ineffectual efforts to raise money, did not continue the lean. And if they

had made individual promises to pay the debt of any person, the only effect would have been to hold the person so promising and not the estate.

Giving to the loose conversation between the administrator and the widow and some of the heirs all the weight they are entitled to, they do not amount to a waiver of the provisions of the act of 1834, limiting the lien of debts against the real estate of a decedent. It is possible that such a waiver may be made, but as was held in Wallace's Appeal, 5 Pa. 106:

"But although the power to postpone the operation of the statute by parol must be asserted, it should not be forgotten that the proof showing an exercise of this power ought to be clear and undoubted. An agreement to the effect averred here ought to be incontrovertibly shown by the party who sets it up before the antagonist party be held bound by it." Wallace's Appeal, 5 Pa. 107.

The law clearly pointed out the remedy for securing the debts of their creditors. They knew in 1881 that the personal estate had been exhausted. It must be presumed that they knew that unless they brought an action or filed a copy of their claim as required by the statute, they would have no lien upon real estate. Having failed to avail themselves of the plain provisions of the law, and lost their lien by their own laches, they have no claim on this fund and no ground for complaint. Now, July 5, 1886, the exceptions to the report of the auditor allowing to John Stiner and others in the list of creditors, Nos. 1 to 12 inclusive, amounting to $385.40, are sustained and the report in respect thereto is set aside.

*C. W. Miller,* for Sarah Welsh, appellant.—The acts of 1797 and 1834 are not enlarging but restraining acts. That they were enacted to set dead men's estates at rest, and enable heirs and others interested to measure with certainty the value of property inherited has been decided. That in the presentation of claims against decedents before an auditor, on distribution in the orphans' court, claimants are no better off, so far as being required to comply strictly to the requirements of the act of assembly limiting liens and actions, than in actions at law, is now well settled; and it can no longer be argued with propriety that administrators and executors as such are invested with such power and authority as to breathe new life into dead claims. But the appellant in this case claims relief from a different source.

While the statute of limitations can be pleaded, and when pleaded is a bar to recovery in the orphans' court as well as in suits at law, it need not be pleaded by parties interested, but if waived by the parties interested, it is binding upon them, and not in their power to wait until the time has passed when the creditors could have put themselves upon record as the law compels them to do, and say to them: "I did not mean to waive any legal right I had; you have been guilty of laches, and now I want the money. If you were too easy, and lacked a knowledge of business and the law, you must suffer." Wallace's Appeal, 5 Pa. 105.

From the time of the decision in Wallace's Appeal in 1847, up to McClintock's Appeal (29 Pa. 360) in 1857, the matter of waiving the limitation by heirs does not appear to have been raised, and from 1857 up to Yorks's Appeal, there was no occasion for raising the question. The decision in Yorks's Appeal, 110 Pa. 69, 1 Atl. 162, 2 Atl. 65, was to protect creditors and heirs from wrongs that might be practised on them, certainly not to enable them to do injustice to others.

The nature of the exceptions filed to the administrator's account clearly shows that the position taken by the widow and heirs in the distribution by the auditor was an after-thought. That the heirs were acting in concert in the matter and for mutual benefit in having the sale postponed; and in their endeavors to raise the money to pay the debts, and secure it by mortgage on the premises, clearly indicated that it was a family arrangement. Arrangements of this kind should be favored for the same reason that the court in Shartel's Appeal, 64 Pa. 25, held that "all compromises and settlements by families are maintained not only as beneficial to themselves, but the law seeks to sustain them as conducting to peace and harmony, where it ought most especially to exist." The auditor's finding was a rational conclusion from all the facts submitted to him, and should not have been disturbed by the court below.

*E. R. Ikeler* and *Grant Herring* for appellees.

PER CURIAM:

These cases were argued together. They are from the same decree. The court correctly held that all the evidence was insufficient to prove a waiver of the limitation of the act of 1834.

Nothing less than clear and undoubted evidence should be held sufficient to extend the lien of debts against the real estate of a decedent. The assignments of error are not sustained.

Decree affirmed in each case, and the appeals dismissed, at the costs of the respective appellants therein.